IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE V. KNIGHT,<br><br>    Plaintiff,<br><br>  v.<br><br>M. S. EVANS, et al.,<br><br>    Defendants. | No. C 06-00887 SBA (PR)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket no. 37) |

## INTRODUCTION

Plaintiff, a state prisoner, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against prison officials at Salinas Valley State Prison (SVSP) based on a deprivation of outdoor exercise for a period of 144 days. Plaintiff then filed an amended complaint, which is the operative complaint in this action.[1] Plaintiff asserts that this deprivation of outdoor exercise violated his right to equal protection under the Fourteenth Amendment and constituted cruel and unusual punishment in violation of the Eighth Amendment. He also asserts the following claims: (1) an Eighth Amendment claim of deliberate indifference to serious medical needs; (2) retaliation by prison officials; (3) claims relating to the California Department of Corrections and Rehabilitation formal grievance process; (4) supervisory liability; (5) unlawful seizure and destruction of property; and (6) an Eighth Amendment claim of cruel and unusual punishment based on holding cell conditions. Plaintiff seeks declaratory relief as well as nominal, compensatory and punitive damages.

On December 10, 2008, the Court found cognizable Plaintiff's Eighth Amendment claim against Defendants SVSP Associate Warden A. Hedgpeth and SVSP Correctional Lieutenant J. Celaya. The Court dismissed Plaintiff's supervisory liability claim with leave to amend and dismissed his retaliation claim without prejudice. The Court dismissed Plaintiff's remaining claims with prejudice. The Court directed Defendants to file an answer and a motion for summary judgment or other dispositive motion.

---

[1] The Court has reviewed both the original and the amended complaint. They are substantially identical, except that Plaintiff makes an additional request for declaratory relief.

On December 24, 2008, Plaintiff filed a motion for reconsideration of the dismissed claims. On December 30, 2008, he amended his supervisory liability claims. On February 11, 2009, the Court denied the motion to reconsider and dismissed the supervisory liability claims without further leave to amend.

Defendants now move for summary judgment. Plaintiff filed an opposition to Defendants' motion. Defendants filed a reply to Plaintiff's opposition.[2]

For the reasons discussed below, the Court GRANTS Defendants' motion for summary judgment.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff has been incarcerated at SVSP Facility C Yard #2 since December 3, 2003. (Knight Decl. ¶ 2.) He was deprived of outdoor exercise for a period of eight-and-a-half weeks from January 23, 2004 to March 22, 2004. (Am. Compl. at 4.) He was again deprived of outdoor exercise for a period of twelve weeks from May 5, 2004 to July 27, 2004. (Id. at 5.) The record shows that during these periods, prison staff at SVSP Facility C reported repeated incidents of inmate violence and conducted cell searches that uncovered weapons and other contraband.

**I.   Events at SVSP Between January 20, 2004 and March 22, 2004**

On January 20, 2004, two inmates battered another inmate in SVSP Facility C. (Celaya Decl. ¶ 14.) On the same day, prison staff discovered thirteen bundles of narcotics during cell searches.[3] (Id.) As a result of this discovery and the inmate battery, Facility C was placed on lockdown. (Celaya Decl. ¶ 14.)

---

[2] On May 29, 2009, Plaintiff filed an objection to Defendants' reply on the grounds that it was filed two days late. The Court finds the arguments in his objection unavailing; therefore, it will consider Defendants' reply.

[3] Plaintiff attempts to dispute this fact, but offers no evidence sufficient to place it in controversy. (Opp'n at 12.) The Court therefore treats the discovery of the narcotics on January 20, 2004 as an undisputed fact.

2

United States District Court
For the Northern District of California

1  Plaintiff was deprived of outdoor exercise beginning on January 23, 2004. (Am. Compl. at
2  4.)

3  Between February 1, 2004 and February 14, 2004, correctional officers discovered
4  "numerous contraband weapons" during cell searches. (Celaya Decl. ¶ 15.) As of February 17,
5  2004, Facility C remained on modified program with no recreation permitted for any inmates.[4]
6  (Knight Decl., Attach. 1.) These restrictions were implemented because of the threat to security
7  posed by the contraband. (Id.) Furthermore, prison staff needed to conduct more cell searches and
8  interviews. (Id.)

9  On February 24, 2004, after the cell searches were completed, some inmates were permitted
10 outdoor exercise. (Celaya Decl. ¶ 16.) During yard exercise that day, one inmate "took a
11 threatening stance" toward prison staff, and two inmates attacked another inmate. (Id.) That same
12 day, an inmate seriously assaulted an officer. (Id. ¶ 17.) As a result of this assault, SVSP Facilities
13 A, B, C and D were returned to modified program with no recreation permitted. (Celaya Decl.,
14 Defs.' Ex. A at 3.)

15 On March 1, 2004, an inmate battered a correctional officer while the officer was conducting
16 cell searches in Facility C. (Celaya Decl. ¶ 18.) On March 2, 2004, an inmate battered a non-
17 custodial staff member in Facility D. (Id.) Following these attacks, Facilities A, B, C and D were
18 continued on modified program with no recreation permitted. (Celaya Decl., Defs.' Ex. A at 5.)

19 On March 10, 2004, correctional officers discovered two inmate-manufactured weapons
20 during cell searches in Facility C. (Celaya Decl. ¶ 19.)

21 On March 17, 2004, some inmates were permitted outdoor exercise. (Id.) That day, while

---

[4] There appears to be a dispute of fact over the definition of "modified program," particularly with respect to the policy governing its implementation. (Knight Decl. ¶ 5; Celaya Decl. ¶ 7.) However, it is essentially undisputed that modified program indicates that some normal inmate activities and privileges have been suspended. (Celaya Decl. ¶ 7.) The terms "lockdown" and "modified program" are not synonymous. (Knight Decl. ¶ 5; Celaya Decl. ¶ 7.) The record does not clearly define "lockdown," but it indicates that a lockdown includes suspension of outdoor exercise. (Knight Decl. ¶¶ 5, 19; Celaya Decl. ¶ 7.) The Court has carefully examined declarations and attached program status sheets and has specifically noted whenever the modified program or lockdown included suspension of recreational privileges. (Knight Decl., Attach. 1; Celaya Decl., Defs.' Ex. A.) Therefore, the precise definition of these terms is not necessary to the Court's analysis.

3

these inmates were exercising, two inmates attacked a third inmate with a homemade knife, inflicting seven puncture wounds. (Id.) On March 18, 2004, modified programming was implemented which restricted recreation only for the inmate groups associated with the attack. (Knight Decl., Attach. 1.)

Plaintiff's deprivation of outdoor exercise ended on March 23, 2004. (Am. Compl. at 4.)

## II.   Events at SVSP Between May 5, 2004 and July 27, 2004

On May 5, 2004, during yard exercise in Facility C, there were two separate incidents in which certain inmates attempted to murder other inmates with deadly weapons made from metal. (Celaya Decl. ¶ 22.) As a result, Facility C was placed on modified program with no recreation permitted. (Knight Decl., Attach. 1.) During a period from May 10, 2004 to May 27, 2004, cell searches in Facility C resulted in discovery of multiple inmate-manufactured weapons. (Celaya Decl. ¶ 23.) In late May, 2004, Facility C experienced multiple incidents of violence, including a fight among multiple inmates and two attacks on correctional officers. (Id. ¶¶ 24-26.) Due to an increasing number of incidents of assault and battery against staff as well as ongoing discoveries of dangerous contraband, the warden placed the entire prison on modified program, effective June 1, 2004. (Celaya Decl., Defs.' Ex. A at 8.) Recreation for all inmates in Facilities A, B, C and D was cancelled. (Id. at 9.) The warden directed that search teams be formed to conduct searches of Facilities A, B, C and D. (Id. at 8.)

On June 7, 2004, an inmate of Facility D Yard #1 assaulted a staff member. (Celaya Decl. ¶ 27.) Between June 14, 2004 and July 9, 2004, cell searches in Facility C uncovered twenty-one inmate-manufactured weapons. (Id. ¶ 28.) On June 16, 2004, an inmate in Facility C battered a correctional officer during cell searches. (Id. ¶ 29.) Between July 3, 2004 and July 7, 2004, prison staff released some inmates to the yard for outdoor exercise. (Celaya Decl. ¶¶ 30-32.) Plaintiff did not receive outdoor exercise during this period. (Knight Decl. ¶ 24.) During this period, four separate instances of inmate-on-inmate violence occurred during yard exercise: one on July 3, one on July 4, and two on July 7. (Celaya Decl. ¶¶ 30-32.) As a result, Facility C was placed on modified program pending completion of searches of all inmates' cells. (Id. ¶ 32.) Following the

4

discovery of deadly weapons in an inmate's cell on July 9, 2004, the modified program was changed to cancel recreation for all Facility C inmates until cell searches were completed. (Celaya Decl., Defs.' Ex. A at 17.) A program status report indicates that, as of July 27, 2004, cell searches had been completed and all inmates not deemed to pose a security threat were returned to normal program status. (Id. at 20.)

Plaintiff's deprivation of outdoor exercise for this second period ended on July 27, 2004. (Am. Compl. at 5.)

## DISCUSSION

### I. Standard of Review

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

If the moving party does meet its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409; Nissan, 210 F.3d at 1105. "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001). However, "[c]onclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003); see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (in equal protection case, conclusory statement of bias not sufficient to carry nonmoving party's burden).

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026,

6

1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence).  Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so.  Id. at 1029.  "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031.

## II.     Applicable Federal Law

### A.     The Eighth Amendment in the Context of Prison Inmates

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of cruel and unusual punishment, the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners.  See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer, 511 U.S. at 832; DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

A prison official violates the Eighth Amendment when these two components are met: (1) the objective component -- the deprivation alleged must be sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the subjective component -- the prison official possesses a sufficiently culpable state of mind.  See id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  The more basic the need, the shorter the time it can be withheld.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to

satisfy the objective component of an Eighth Amendment claim. See id. at 732-33.

To satisfy the subjective component, the requisite state of mind depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

Neither negligence nor gross negligence will constitute deliberate indifference. See Farmer, 511 U.S. at 835-36 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. See Farmer, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See id. An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. See id. at 842. This is a question of fact. See id. A heightened pleading standard applies to the subjective component of Eighth Amendment claims: the plaintiff must make non-conclusory allegations supporting an inference of unlawful intent. Alfrey v. United States, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to Bivens Eighth Amendment claim).

### B. The Eighth Amendment Applied to Deprivation of Outdoor Exercise

Exercise is one of the basic human necessities protected by the Eighth Amendment. See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993); Toussaint v. Rushen, 553 F. Supp. 1365, 1380 (N.D. Cal. 1983), aff'd in part and vacated in part, 722 F.2d 1490 (9th Cir. 1984). Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well being" of prisoners. See Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).

Prisoners "confined to continuous and long-term segregation" may not be deprived of

outdoor exercise. See Keenan v. Hall, 83 F.3d 1083, 1089-90 (9th Cir. 1996) (holding that plaintiff's undisputed claim of denial of outdoor exercise for six months while in segregation sufficient to proceed to trial), amended, 135 F.3d 1318 (9th Cir. 1998). "The long-term denial of outside exercise [to prisoners] is unconstitutional." LeMaire, 12 F.3d at 1458; see Sakai, 48 F.3d at 1087-88 (six-week deprivation of outdoor exercise while imprisoned under harsh conditions sufficient to proceed to trial); cf. May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (deprivation of outdoor exercise for three weeks where plaintiff was able to exercise in cell and leave cell for shower not enough to state Eighth Amendment claim). A prisoner in long-term and continuous segregation must be provided regular outdoor exercise unless "inclement weather, unusual circumstances, or disciplinary needs" make it impossible. See Spain, 600 F.2d at 199. Deprivation of outdoor exercise is not a per se violation of the Eighth Amendment; whether it is a violation depends on the specific facts of the deprivation. See id. However, the denial of outdoor exercise for security reasons does not violate the Eighth Amendment. See LeMaire, 12 F.3d at 1458 (upholding long-term denial of outdoor exercise to prisoner representing "grave security risk" who can exercise within his cell); Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980) (upholding temporary deprivation of outdoor exercise during "lockdown" initiated during a "genuine emergency"), cert. denied, 451 U.S. 937 (1981).

### III.  Analysis

Defendants present four grounds in support of their motion for summary judgment: (1) Defendants did not violate Plaintiff's rights under the Eighth Amendment because they were not deliberately indifferent to his health and safety needs (Defs.' MSJ at 11-12); (2) Plaintiff has failed to show that Defendants were the actual and proximate cause of his suffering (id. at 15-16); (3) Plaintiff has not alleged an injury (id. at 16); and (4) Defendants are entitled to qualified immunity because it would not have been clear to a reasonable prison official that it was unlawful to deny an inmate outdoor exercise in order to protect the safety and security of prison staff and inmates[5] (id. at 16-19).

---

[5] In his opposition, Plaintiff seems to allege that he did not in any way cause or contribute to any incidents of violence, discovery of weapons or contraband, or other events that may have threatened the security of SVSP during the periods of deprivation. (Opp'n at 4; Knight Decl. ¶¶ 10, 13, 16, 18.)

9

### A. **Eighth Amendment Claim**

Defendants concede that Plaintiff's 144-day deprivation of outdoor exercise was sufficiently serious to satisfy the objective component of an Eighth Amendment claim.[6] (Defs.' MSJ at 12.)

The subjective component of an Eighth Amendment violation requires a prison official to demonstrate deliberate indifference to an inmate's health or safety needs. See Farmer, 511 U.S. at 834. Viewing the facts in the light most favorable to the Plaintiff and comparing these facts to other cases involving deprivation of outdoor exercise, the Court finds that the Plaintiff's deprivation of outdoor exercise for a total of 144 days because of security concerns at SVSP does not show that Defendants were deliberately indifferent to Plaintiff's health or safety needs. See Hayward, 629 F.2d at 603.

Denial of outdoor exercise for bonafide security reasons does not violate the Eighth Amendment. Id.; LeMaire, 12 F.3d at 1458. However, the defendants cannot obtain summary judgment merely by claiming logistical difficulties, even if those difficulties are linked to general security concerns inherent in the prison environment. See Sakai, 48 F.3d at 1088. In Sakai, the plaintiff, Terry Smith, spent almost twenty-four hours per day in solitary confinement. Id. at 1087. Despite the prison's policy of providing five hours per week of outdoor exercise, Smith received only forty-five minutes per week for a six-week period. Id. The Ninth Circuit held that this six-week period was a sufficiently serious deprivation to satisfy the objective prong of the Eighth

---

Defendants make no allegation to the contrary. Therefore, the Court assumes without deciding that Plaintiff did not in any way cause or contribute to any incidents of violence, discovery of weapons or contraband or other events that may have threatened the security of SVSP during these two periods.

[6] Plaintiff repeatedly refers to the existence of a medical chrono prescribing him outdoor exercise. (Opp'n at 9, 14, 17, 18, 25; Knight Decl. ¶¶ 5, 13, 18.) He seems either to be raising a claim of deliberate indifference to serious medical needs or to be arguing that the chrono put Defendants on notice of the risk to his health posed by the denial of outdoor exercise. (Id.) Plaintiff has not requested leave to amend his complaint to add this new deliberate indifference claim; therefore, the Court will not consider it. Plaintiff was capable of raising this claim, given that he originally raised several other claims of deliberate indifference. (Am. Compl. at 19, 21.) The issue of notice is irrelevant because Defendants do not argue that they were unaware of Plaintiff's deprivation of outdoor exercise or of the risk it posed to his health.

10

Amendment inquiry. Id. at 1088. The defendants did not claim that Smith in particular posed a security risk but instead claimed that logistical difficulties, such as the need for a guard to escort prisoners to the yard one at a time, prevented them from complying with their outdoor exercise policy. Id. at 1087-88. The Ninth Circuit held that "the defendants' vague reference to logistical problems" could not justify summary judgment on the question of deliberate indifference, even though the logistical problems were linked to general security concerns. Id. at 1088.

In Hayward, the deprivation of outdoor exercise was based on specific and immediate security concerns. 629 F.2d at 600. From 1970 to 1974, San Quentin State Prison experienced "82 assaults with weapons and 12 killings, as well as 71 cases of possession of weapons and 2 attempted escapes." Id. This period saw a sharp increase in the rate of violent incidents and a steady growth in the influence of prison gangs. Id. In response to two gang-related inmate murders in December, 1974, the warden imposed a lockdown on the entire prison to prevent escalating violence. Id. This lockdown lasted for six months. Id. Initially, prisoners were confined to their cells twenty-four hours a day, with only two "sack lunches." Id. Showers and outdoor exercise were completely suspended initially; and education, visitation and movie privileges were restricted during the entire lockdown. Id. Some outdoor exercise was permitted after one month, but normal exercise routine was not restored for five months. Id. The Ninth Circuit held (1) that the deprivation was temporary, (2) that it was in response to a genuine security emergency, (3) that prison officials must be afforded "reasonable leeway" in determining when it is safe to relax such emergency restrictions and (4) that therefore this deprivation of outdoor exercise did not violate the Eighth Amendment. Id. at 603 (affirming the district court's grant of summary judgment for the defendants).

In Lemaire, the plaintiff had repeatedly attacked prison staff and other inmates. 12 F.3d at 1447-49. Lemaire admitted that he had planned many of the attacks, and he threatened to repeat them. Id. On at least two occasions, Lemaire took advantage of an outdoor exercise period to stage his attacks. Id. at 1448-49. Because of the threat Lemaire posed to inmates and staff, prison officials were repeatedly forced to confine him to the Disciplinary Segregation Unit and to curtail

11

his outdoor exercise privileges. Id. at 1447-49. The district court had found that, for safety and disciplinary reasons, Lemaire had been deprived of outdoor exercise for most of a five-year period. Id. at 1457. The Ninth Circuit held that, while the period of deprivation was sufficiently serious to satisfy the objective prong of the Eighth Amendment inquiry, the defendants' decision to deny Lemaire outdoor exercise did not constitute deliberate indifference under the circumstances. Id. at 1458.

The facts of the instant case are more comparable to those in Hayward than those in Sakai or Lemaire. Here, the undisputed facts show that between January 20, 2004 and July 27, 2004, SVSP Facility C experienced at least thirty-one weapons discoveries and at least seventeen violent incidents, including seven attacks on prison staff and two attempted murders. This indicates a level of security risk comparable to that experienced at San Quentin State Prison between 1970 and 1974, which was at issue in Hayward. Unlike in Sakai, Defendants have not attempted to justify the deprivation by pointing to logistical problems arising from general security concerns of an indefinite nature. Here, as in Hayward, Defendants have cited specific incidents of violence that they believed required the restriction of outdoor exercise in order to protect the health and safety of staff and inmates, including Plaintiff. In addition, the deprivation in this case was temporary. (Am. Compl. at 4-5.) While Plaintiff suffered a longer period of deprivation (144 days) than in Sakai (six weeks) or Hayward (one to five months), he has not alleged harsh conditions of confinement. Cf. Sakai, 48 F.3d at 1087 (indicating that, when conditions of confinement are harsh, denial of outdoor exercise is more likely to constitute cruel and unusual punishment). Furthermore, the restrictions imposed here were less severe than in Hayward. Visiting privileges were never suspended; showers were typically permitted every seventy-two hours; and inmates were allowed priority medical appointments, including visits to the medical clinic. (Celaya Decl. ¶ 12.) Defendants made multiple attempts to restore outdoor exercise, which were thwarted by renewed violence. In Hayward, the gradual reintroduction of exercise began after one month, and outdoor exercise was completely restored after five months. Plaintiff's deprivation is significantly less than the deprivation justified by security concerns in Lemaire, which took place during a five-year period. In light of the analysis

above, the Court finds that Defendants' decision to curtail Plaintiff's outdoor exercise based on security concerns does not constitute deliberate indifference under the circumstances presented here.

In his opposition, Plaintiff argues that Defendants' decision to deprive him of outdoor exercise was not based on valid security concerns, instead alleging that:  (1) Defendants created many of the security concerns, either deliberately or by mismanagement (Knight Decl. ¶¶ 18, 19, 25, 26); (2) Defendants exaggerated the seriousness of the security concerns in order to justify imposing lockdowns or modified programming (id. ¶¶ 4, 6, 18, 20, 22, 24, 26); (3) Defendants exaggerated the seriousness of the security concerns and deliberately prolonged their investigations in order to extend the duration of the lockdowns or modified programming (id. ¶¶ 20, 28, 29); and (4) Defendants' motive for imposing and extending the lockdowns/modified programming was retaliatory or punitive in nature (id. ¶¶ 9, 22, 26).  For example, Plaintiff claims that Defendants created security concerns by releasing hostile inmates to the yard.  However, he provides no competent evidence that Defendants had reason to believe these inmates posed a higher risk of violence than others or even that Defendants knew that any of these inmates were hostile.  Plaintiff does not dispute that any of the above-mentioned incidents of violence and weapons took place.  He concedes that "[i]t was common for an incident to occur on the yard that would result in the restriction of yard access for Facility C inmates." (Knight Decl. ¶ 9.)  He offers no evidence based on personal knowledge to support his allegations that the security concerns were not valid.[7] "Conclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera, 331 F.3d at 1078.  Therefore, the Court finds unavailing Plaintiff's argument that the deprivation was not based on valid security concerns.

---

[7] In his sole attempt to provide factual support for his allegation that Defendants deliberately prolonged the modified programming, Plaintiff calculates that all of the inmate interviews could be completed in a single day, assuming that interviews take a maximum of five minutes (apparently including transit time). (Knight Decl. ¶ 28.)  Even if the Court assumes his calculations to be correct, Plaintiff fails to establish that prison staff unreasonably prolonged their investigations, because he does not account for the time required for cell searches conducted during these investigations.  In addition, Defendants do not claim that the facility is automatically returned to normal programming upon completion of the investigation.  Therefore, even if the investigations had been completed more quickly, there was no guarantee that Plaintiff would immediately have received outdoor exercise.

13

Accordingly, summary judgment is GRANTED to Defendants on Plaintiff's Eighth Amendment Claim.

### B.     Qualified Immunity

In the alternative, Defendants claim that summary judgment is proper in this case because they are entitled to qualified immunity from liability for civil damages.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier and holding that a court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202.

Assuming arguendo that Plaintiff's deprivation of outdoor exercise constitutes a constitutional violation, the question is whether a reasonable prison official would have recognized that such a deprivation was unlawful in the situation that Defendants faced.  Prison officials have an obligation to ensure the safety of inmates.  Farmer, 511 U.S. at 832.  Ninth Circuit case law indicates that prison officials who temporarily deny inmates outdoor exercise because of safety concerns do not violate the Eighth Amendment.  See LeMaire, 12 F.3d at 1458; Hayward, 629 F.2d at 603.  Here, the circumstances were as follows:  (1) Plaintiff's deprivation of outdoor exercise was temporary (Am. Compl. at 4-5); (2) SVSP Facility C experienced at least thirty-one weapons discoveries and at

least seventeen violent incidents during the two periods of deprivation (Celaya Decl. ¶¶ 13-33); (3) the deprivation was due to specific security concerns raised by these repeated violent incidents (id. ¶¶ 8, 9, 12, 13); and (4) Defendants attempted to restore outdoor exercise privileges as quickly as they believed feasible (id. ¶¶ 12, 13, 16, 17, 20, 22, 30, 31). This case is similar to Hayward, where the Ninth Circuit held that the deprivation of outdoor exercise because of security concerns did not violate the Eighth Amendment. 629 F.2d at 600, 603. The conditions of confinement Plaintiff faced were less severe than the twenty-four-hour solitary confinement in Sakai. 48 F.3d at 1087. Plaintiff's 144-day deprivation was far shorter than the almost five-year deprivation found lawful in Lemaire. 12 F.3d at 1457. Therefore, it would not be clear to a reasonable prison official that it was unlawful to temporarily curtail Plaintiff's outdoor exercise for 144 days under the circumstances present here.

The Court finds that Defendants are entitled to summary judgment based on their qualified immunity defense. Accordingly, Defendants' motion for summary judgment is GRANTED.[8]

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment (docket no. 37) is GRANTED.

The Clerk of the Court shall enter judgment in favor of Defendants Celaya and Hedgpeth and close the file.

This Order terminates Docket no. 37.

IT IS SO ORDERED.

DATED: 6/30/07

SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[8] Because the Court finds that Defendants are entitled to summary judgment, it need not address Defendants' alternative arguments regarding proximate cause and actual injury.

P:\PRO-SE\SBA\CR.06\Knight0887.MSJ.wpd    15

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CLARENCE KNIGHT,

        Plaintiff,

  v.

M S EVANS, WARDEN et al,

        Defendant.

Case Number: CV06-00887 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 1, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Clarence V. Knight C07508
California State Prison - Soledad
P.O. Box 1050
Soledad, CA 93960-1050

Dated: July 1, 2009

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.06\Knight0887.MSJ.wpd 16